IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**UNITED STATES OF AMERICA,**                    06-MC-9021-BR

      **Petitioner,**                              OPINION AND ORDER

v.

**GARVEY SCHUBERT BARER,**

      **Respondent.**


**KARIN J. IMMERGUT**
United States Attorney
**ROBERT D. NESLER**
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1069

**PETER KEISLER**
Assistant Attorney General
**MICHAEL F. HERTZ**
Director, Commercial Litigation Branch
**MELISSA A. MEISTER**
Attorney, Civil Division
601 D Street, N.W., Room 9541
Washington, D.C.  20004
(202) 616-7986

      Attorneys for Petitioner

1 - OPINION AND ORDER

**ADRIENNE W. WHITWORTH**
**JOY ELLIS**
Garvey Schubert Barer
121 SW Morrison Street
11th Floor
Portland, OR 97204-3141
(503) 228-3939

    Attorneys for Respondents

**RON HOEVET**
**PER C. OLSON**
Hoevet Boise & Olson, P.C.
1000 S.W. Broadway, Suite 1500
Portland, OR  97205
(503) 228-0497

    Attorneys for Intervenors Stanley Baldwin, David Duke, Warren Glover, and Richard Hicks

**BROWN, Judge.**

This matter comes before the Court on the United States' Amended Petition for Summary Enforcement of Inspector General Subpoena (#1, #4).  For the reasons that follow, the Court **DENIES** the Petition.

## BACKGROUND

Cardiovascular Surgical Associates, P.C. (CVSA) was a professional corporation owned by four physicians:  Drs. Stanley Baldwin, David Duke, Warren Glover, and Richard Hicks.  In October 2002, CVSA retained Thomas Crane of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo as legal counsel to assist CVSA and two other entities to form a heart institute.  On October 15, 2002,

2 - OPINION AND ORDER

Crane sent CVSA an engagement letter acknowledging his retention.

On April 1, 2003, Robert Burnett, M.D., a doctor working at CVSA, sent a letter to Dr. Hicks in which he informed Dr. Hicks that he (1) was uncomfortable with CVSA's policy to bill Medicare for "first assistant surgeons," (2) had questioned the policy formally and informally on a number of occasions, (3) had retained counsel "to research the legitimacy of current practices of CVSA [as to these Medicare billings]," and (4) had been advised by his attorney that CVSA's billing practices were illegal and were "subject[ing] the partnership to both civil and criminal liability."

On April 3, 2003, Clark Williams, an attorney representing CVSA in other matters, emailed Crane, noted Crane's involvement with CVSA's formation of a heart center in 2002, and made the following request:

> We would like to retain you to advise CVSA with regard to the practice of billing Medicare and other insurers for a "second assist" in the course of open heart surgery. . . . A staff surgeon has raised a question as to whether these billings are permissible under the Medicare laws. . . . Again, we would like to retain you to consult with us on this issue and, hopefully, provide definitive advice on the question.

On April 10, 2003, Dr. Duke signed the October 2002 engagement letter as "duly authorized on behalf of CVSA" and returned it to Crane.

Throughout the spring and summer of 2003, Crane corresponded

3 - OPINION AND ORDER

with Dr. Hicks and Jan Hulbert, CVSA's Administrator, about the Medicare billing issue. CVSA paid Crane for his services in the same manner that it paid all of its expenses: After paying Crane, CVSA billed each of the partners one-fourth of the amount.

In August 2003, the Department of Health and Human Services Office of the Inspector General began to investigate CVSA for violations of the False Claims Act, 18 U.S.C. § 1001, *et seq.*, due to alleged fraud and abuse in connection with CVSA's Medicare billing practices.

On November 1, 2004, PeaceHealth purchased CVSA. PeaceHealth, however, did not assume the liabilities, expenses, losses, or obligations of CVSA or of its stock-holders arising out of or relating to activities of the business prior to November 1, 2004. On August 3, 2005, Robert Weaver, counsel for PeaceHealth, notified the government that his law firm had a copy of Crane's file and that the contents contained legal advice regarding the billing of Medicare for assistants at surgery. Weaver informed the government that PeaceHealth did not intend to assert any claim of attorney-client privilege over the file if the government issued a subpoena seeking the file.

On August 15, 2005, the government served a subpoena on PeaceHealth seeking production of "any and all communications, documentation, memoranda, correspondence, notes, files, or

4 - OPINION AND ORDER

records . . . related to any consultations, reviews, audits or advice sought or received by or on behalf of [CVSA] and/or the individual physician members of CVSA, regarding assistant at surgery procedures . . . ."

On August 26, 2005, counsel for Dr. Baldwin informed Weaver that Intervenors Drs. Baldwin, Duke, Glover, and Hicks were asserting attorney-client privilege with respect to the Crane file. Counsel asked PeaceHealth not to produce the file to the government until Intervenors could litigate the issue of attorney-client privilege.

On August 29, 2005, Weaver informed the government of Intervenors' objection to production of Crane's file. In response, the government filed a Petition for Summary Enforcement of the Inspector General Subpoena in this Court.

## **STANDARDS**

Federal Rule of Evidence 501 provides in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Questions of attorney-client privilege that "arise in the course of the adjudication of federal rights are 'governed by the

5 - OPINION AND ORDER

principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989)(quoting Fed. R. Evid. 501).

The party asserting an attorney-client privilege bears the burden of proof to establish that the privilege applies to the subpoenaed documents.  *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995).

## DISCUSSION

The government seeks an order from this Court requiring Weaver to produce Crane's file.  Intervenors, however, contend they have an attorney-client privilege as to Crane's file because they believe Crane represented both CVSA and Intervenors individually.  Thus, Intervenors contend Crane's files may not be produced over their objections.

When control of a corporation "passes to new management, the authority to assert and waive the corporation's attorney client privilege passes as well."  *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985).  Intervenors concede PeaceHealth may waive CVSA's attorney-client privilege as to Crane's file.  Intervenors, however, contend they each have an attorney-client privilege as to Crane's file because Crane also represented each of them individually.

6 - OPINION AND ORDER

In *Admiral Insurance Co. v. Mason, Bruce & Girard, Inc.*, the Court explained a formal agreement is not required to establish an attorney-client relationship. Instead

> the putative client must hold a subjective belief that the relationship exists, coupled with an objectively reasonable basis for the belief. . . . The objective basis is evaluated in light of the attorney's conduct. The evidence must show that the lawyer understood or should have understood that the relationship existed, or acted as though the lawyer was providing professional assistance or advice on behalf of the putative client.

No. CV 02-818-HA, 2002 WL 31972159, at *1 (D. Or. Dec. 5, 2002) (internal quotation and citations omitted). *See also In re Grand Jury Subpoena*, 415 F.3d 333, 339 (4th Cir. 2005)("subjective belief that [the putative client is] represented is not alone sufficient to create an attorney-client relationship."). Thus the Court looks to the conduct of both Intervenors and Crane to determine the reasonableness of Intervenors' asserted belief that Crane represented them as well as CVSA. *See Boskoff v. Yano*, 57 F. Supp. 2d 994, 998-99 (D. Haw. 1998).

In Williams's April 3, 2003, email to Crane, he requests Crane to act as the attorney for CVSA, and Dr. Duke signed Crane's engagement letter as "duly authorized on behalf of CVSA." Crane's file materials show he consistently addressed his correspondence to Jan Hulbert and referred to his client as CVSA.

Standing alone, these circumstances suggest it would not be reasonable to believe Crane also represented Intervenors

individually.  Indeed, the Court notes Crane's file does not contain any reference to Crane's alleged representation of Intervenors individually, and Intervenors have not produced any evidence that Crane spoke with or had any interaction with either Dr. Baldwin or Dr. Glover.  In addition, Dr. Duke's signature on the October 2002 engagement letter and a half-hour telephone conversation are the only interactions between Crane and Dr. Duke that are documented in Crane's file.

Nonetheless, Intervenors provide affidavits in which they testify they believe Crane represented them individually because they were aware of their personal exposure in light of the nature of the allegations at issue.  In addition, Dr. Hicks testified in his Supplemental Declaration that, after he received Dr. Burnett's letter, he contacted Crane to inquire whether Crane could represent CVSA and Intervenors individually with respect to the Medicare fraud issues.  According to Dr. Hicks, Crane informed him that he would represent CVSA and Intervenors individually.

In light of Dr. Hick's Supplemental Declaration and the fact that Intervenors were aware they could be liable personally for the alleged fraud, the Court concludes this record supports Intervenors' position that they had an objectively reasonable basis to believe Crane represented them individually.  In the absence of persuasive evidence to the contrary, the Court finds

8 - OPINION AND ORDER

Intervenors have sustained their burden of proof, and, therefore, the government is not entitled to subpoena Crane's file over their objection.

## CONCLUSION

For these reasons, the Court **DENIES** the Amended Petition for Summary Enforcement of Inspector General Subpoena (#1, #4).

IT IS SO ORDERED.

DATED this 30th day of October, 2006.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge