IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 06-MC-9021-BR |
| Petitioner, | OPINION AND ORDER |
| v. | |
| **GARVEY SCHUBERT BARER,** | |
| Respondent. | |

**KARIN J. IMMERGUT**
United States Attorney
**ROBERT D. NESLER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1069

**PETER KEISLER**
Assistant Attorney General
**MICHAEL F. HERTZ**
Director, Commercial Litigation Branch
**MELISSA A. MEISTER**
Attorney, Civil Division
601 D Street, N.W., Room 9541
Washington, D.C. 20004
(202) 616-7986

      Attorneys for Petitioner

1 - OPINION AND ORDER

**ADRIENNE W. WHITWORTH**
**JOY ELLIS**
Garvey Schubert Barer
121 S.W. Morrison Street
11th Floor
Portland, OR 97204-3141
(503) 228-3939

       Attorneys for Respondents

**RON HOEVET**
**PER C. OLSON**
Hoevet Boise & Olson, P.C.
1000 S.W. Broadway, Suite 1500
Portland, OR  97205
(503) 228-0497

       Attorneys for Intervenors Stanley Baldwin, David Duke, Warren Glover, and Richard Hicks


**BROWN, Judge.**

This matter comes before the Court on the *The Register-Guard*'s Motion (#50) to unseal in their entirety (1) Intervenors' Supplemental Memorandum of Law Regarding Attorney-Client privilege (#31), (2) the Court's May 26, 2006, Order (#33) sealing documents, (3) Intervenors' Supplemental Factual Submissions and Argument (#34), (4) United States' Response to Intervenors' Supplemental Factual Submissions and Argument (#43), and (5) all of the Court's October 30, 2006, Opinion and Order (#48).  For the reasons that follow, the Court **GRANTS** the Motion.


## BACKGROUND

Cardiovascular Surgical Associates, P.C. (CVSA) was a

2 - OPINION AND ORDER

professional corporation owned by four physicians: Drs. Stanley Baldwin, David Duke, Warren Glover, and Richard Hicks. In October 2002, CVSA retained Thomas Crane of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo as legal counsel to assist CVSA and two other entities in forming a heart institute. On October 15, 2002, Crane sent CVSA an engagement letter acknowledging his retention.

On April 3, 2003, Clark Williams, an attorney representing CVSA in other matters, emailed Crane, noted Crane's involvement with CVSA's formation of a heart center in 2002, and made the following request:

> We would like to retain you to advise CVSA with regard to the practice of billing Medicare and other insurers for a "second assist" in the course of open heart surgery. . . . A staff surgeon has raised a question as to whether these billings are permissible under the Medicare laws. . . . Again, we would like to retain you to consult with us on this issue and, hopefully, provide definitive advice on the question.

On April 10, 2003, Dr. Duke signed the October 2002 engagement letter as "duly authorized on behalf of CVSA" and returned it to Crane.

Throughout the spring and summer of 2003, Crane corresponded with Dr. Hicks and Jan Hulbert, CVSA's Administrator, about the Medicare billing issue. CVSA paid Crane for his services in the same manner that it paid all of its expenses: CVSA billed each of the partners one-fourth of the amount that it paid Crane.

3 - OPINION AND ORDER

In August 2003, the Department of Health and Human Services Office of the Inspector General began to investigate CVSA for violations of the False Claims Act, 18 U.S.C. § 1001, *et seq.*, due to alleged fraud and abuse in connection with CVSA's Medicare billing practices.

On November 1, 2004, PeaceHealth purchased CVSA. PeaceHealth, however, did not assume the liabilities, expenses, losses, or obligations of CVSA or its stockholders arising out of or relating to activities of the business prior to November 1, 2004.  On August 3, 2005, Robert Weaver, counsel for PeaceHealth, notified the government that his law firm had a copy of Crane's file and that the contents contained legal advice regarding the billing of Medicare for assistants at surgery.  Weaver informed the government that PeaceHealth did not intend to assert any claim of attorney-client privilege if the government issued a subpoena seeking the file.

On August 15, 2005, the government served a subpoena on PeaceHealth seeking production of "any and all communications, documentation, memoranda, correspondence, notes, files, or records . . . related to any consultations, reviews, audits or advice sought or received by or on behalf of [CVSA] and/or the individual physician members of CVSA, regarding assistant at surgery procedures."

On August 26, 2005, counsel for Dr. Baldwin informed Weaver

that Intervenors Drs. Baldwin, Duke, Glover, and Hicks were asserting attorney-client privilege with respect to the Crane file. Counsel asked PeaceHealth not to produce the file for the government until Intervenors could litigate the issue of attorney-client privilege.

On August 29, 2005, Weaver informed the government of Intervenors' objection to the production of Crane's file. In response, the government filed a Petition for Summary Enforcement of the Inspector General Subpoena in this Court.

On October 30, 2006, the Court issued an Opinion and Order under seal in which it concluded the record supported Intervenors' position that they had an objectively reasonable basis to believe Crane represented them individually, and, therefore, the government was not entitled to subpoena Crane's file over their objection. Accordingly, the Court denied the government's Petition.

On November 22, 2006, the Court received a letter from *The Register-Guard* in which it requested the Court to unseal the October 30, 2006, Opinion and Order.

On December 11, 2006, *The Register-Guard* filed a Memorandum in which it expanded the scope of its request and sought an order unsealing (1) Intervenors' Supplemental Memorandum of Law Regarding Attorney-Client privilege (#31), (2) the Court's May 26, 2006, Order (#33) sealing documents, (3) Intervenors'

5 - OPINION AND ORDER

Supplemental Factual Submissions and Argument (#34), (4) United States' Response to Intervenors' Supplemental Factual Submissions and Argument (#43), and (5) the Court's October 30, 2006, Opinion and Order (#48).

On December 13, 2006, the Court held a hearing on *The Register-Guard*'s Motion to unseal the Opinion and Order and requested briefs from the parties as to their positions regarding the additional sealed materials sought by *The Register-Guard*. Following the hearing, the Court unsealed a redacted version of the October 30, 2006, Opinion and Order.

On December 18, 2006, Intervenors filed a Response to *The Register-Guard*'s Motion to unseal materials in which they did not object to the Court unsealing the (1) Intervenors' Supplemental Memorandum of Law Regarding Attorney-Client privilege (#31), (2) the Court's May 26, 2006, Order (#33), and (3) United States' Response to Intervenors' Supplemental Factual Submissions and Argument (#43).  Intervenors also did not object to the Court unsealing Intervenors' Supplemental Factual Submissions and Argument (#34) except for paragraph 2 of the Supplemental Declaration of Dr. Hicks and Exhibit 1 to Dr. Hicks's Affidavit. Intervenors continued to object to the Court unsealing the redacted portions of the Court's Opinion and Order issued October 30, 2006.

**DISCUSSION**

Intervenors object to the unsealing of portions of Dr. Hicks's Supplemental Declaration; Exhibit 1 to Dr. Hicks's Affidavit; and the second paragraph of the Court's October 30, 2006, Opinion and Order, all of which either reference or contain an April 1, 2003, letter from Robert Burnett, M.D., a doctor working at CVSA, to Dr. Hicks regarding CVSA's policy to bill Medicare for "first assistant surgeons."

Although the government is conducting an investigation as to these matters, Intervenors contend these documents should stay sealed because "Intervenors have not been sued by the United States or charged with any crime." Thus, Intervenors argue these materials should remain sealed as a matter of fundamental fairness.

*The Register-Guard*, however, contends there is a strong public interest in these materials because of public concerns regarding the increase in Medicare costs that are due, in part, to the kind of conduct the government is investigating in this matter. *The Register-Guard* argues, therefore, Intervenors must establish a compelling interest exists for these materials to remain sealed. *The Register-Guard* contends the Intervenors have not done so.

**I.   Standards**

"Under the First Amendment, the press and the public have a

7 - OPINION AND ORDER

presumed right of access to court proceedings and documents." *Oregonian Publ'g Co. v. U. S. Dist. Court for the Dist. of Or.*, 920 F.2d 1462, 1465 (9th Cir. 1990)(citation omitted).  A party seeking to seal court proceedings or documents can overcome the presumed right of access "only by [establishing] an overriding right or interest 'based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Id.* (quoting *Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501, 510 (1985)).

"Most of the cases recognizing the presumption of access relate to the right of the public (and press) to attend criminal proceedings and to obtain documents used in criminal cases." *Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984)(citing *Press-Enterprise Co.*; *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596 (1982); *United States v. Dorfman*, 690 F.2d 1230 (7th Cir. 1982)).  The Seventh Circuit, however, has held "the policy reasons for granting public access to criminal proceedings apply to civil cases as well."  *Id.* (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1982)).  The Seventh Circuit recognized "these policies relate to the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system."  *Id.* at 1309 (citations omitted).

8 - OPINION AND ORDER

    Similarly, the Third Circuit has held

> Although the right of access to civil trials is not absolute, nevertheless, as a First Amendment right it is to be accorded the due process protection that other fundamental rights enjoy . . . . Therefore, to limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest.

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984)(citations omitted).

    The reasoning in these cases is persuasive.  Accordingly, the Court concludes the policy reasons for granting public access to criminal proceedings also apply to a proceeding such as this one, and, therefore, the Court applies the standards for criminal proceedings to determine whether the described materials should remain sealed.

## II.  Analysis

    The Ninth Circuit has held

> [C]riminal proceedings and documents may be closed to the public without violating the first amendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.  The court must not base its decision on conclusory assertions alone, but must make specific factual findings.

*Oregonian*, 920 F.2d at 1466 (citing *Press-Enterprise v. Superior Ct.*, 478 U.S. 1, 13-14 (1986)).

9 - OPINION AND ORDER

Here Intervenors contend certain of these materials should remain sealed as a matter of fundamental fairness, but they do not cite any authority to support the position that merely invoking the principle of fundamental fairness is a sufficient basis to establish a compelling interest in sealing the documents at issue.  Moreover, Intervenors conceded at the hearing on *The Register-Guard*'s Motion that the April 1, 2003, letter is not protected by any privilege, including attorney-client privilege, nor does the letter contain trade secrets or similarly protected materials. The Court, therefore, concludes Intervenors have not identified a compelling interest that is sufficient to overcome the presumption that the press and the public have a right of access to the proceedings and documents in this matter.

## CONCLUSION

For these reasons, the Court **GRANTS** *The Register-Guard*'s Motion (#50) to unseal in their entirety (1) Intervenors' Supplemental Memorandum of Law Regarding Attorney-Client privilege (#31), (2) the Court's May 26, 2006, Order (#33) sealing documents, (3) Intervenors' Supplemental Factual Submissions and Argument (#34), (4) United States' Response to Intervenors' Supplemental Factual Submissions and Argument (#43),

and (5) the Court's October 30, 2006, Opinion and Order (#48), and directs the Clerk of Court to unseal these records accordingly.

    IT IS SO ORDERED.

    DATED this 2nd day of February, 2007.


                                        /s/ Anna J. Brown
                                        _____
                                        ANNA J. BROWN
                                        United States District Judge